Mr. Lewin, you have a motion to cite additional authority? Yes, each side has filed a motion to cite additional authority, Your Honor. Ms. Krupke, do you have any objection? No. I have no objection to hers. Wait a second. Both of you have sentenced? Correct. Both of you have sentenced? People v. Downs is the case I added. People v. Skillam is the case Ms. Krupke added. We filed a motion on Monday and I included in the motion the language that I had constantly told Mr. Lewin and Ms. Krupke. Okay. That motion will be granted as well.        Mr. Lewin. Mr. Lewin. Mr. Lewin. Mr. Lewin. Mr. Lewin. Mr. Lewin. Mr. Lewin. I have one enigmatic question for you relative to what you just said, and that is, could the fact that the trial court said nothing was something that the trial attorney exercising trial strategy would not bring to the judge's attention, or would that be ineffectiveness of counsel? Well, the defendant was pro se at this hearing, and the attorney was there defending herself, so why she would have no reason to call it to his attention. It would be against, it's the whole reason you ultimately need a different attorney in these situations. It's because her own representation is there. Well, then would the pro se defendant, by not doing this, have waived this fee check? Well, I would submit that's putting far too high a burden on the pro se defendant to point out, to know that the judge isn't going to look at what happened back in 2007. That's the beauty of being a pro se, is you can hurt yourself, and you can't claim someone hurt you. Well, and in this situation, this isn't one where the defendant waived his right to counsel and chose to go pro se. He had no choice about being pro se at this proceeding. And in that situation, I don't think you can hold him to the standard of an attorney, or to the standard of a pro se defendant who elects to represent himself. This man's in there on his own, trying to represent, trying to make the best argument he can of the ineffective assistance claims. That's why we're saying this is analogous to first-stage post-conviction petitions. The standard should be, what the judge should have been looking at was, is there any issue here that involves a showing of possible neglect? We would suggest that possible neglect should be arguable neglect, just like the standard for a first-stage post-conviction petition to get from the first to the second stage. And I point out on this argument, on what should be the standard, even the case cited by the state in the very first paragraph of its brief about what a claim that lacks merit and therefore does not show possible neglect is, it says, a claim lacks merit if it is conclusory, misleading, or legally immaterial, or does not bring to the trial court's attention a colorable claim of ineffective assistance of counsel. That is a very low standard. This defendant was able to meet that standard, which I'll discuss in a minute. But in talking about what the standard should be, it should only be a low standard to show possible neglect, just like the first-stage post-conviction standard. And the reason we cited Downs as additional authority, this court recently addressed the situation of what are the responsibilities of an attorney in a crankle case that gets to the second phase. And this court used the post-conviction test, used the arguable claim test, to say which claims the attorney must then present when the attorney is appointed. If the attorney has to meet that, only has to advance any claim that meets the first-stage post-conviction claim, the defendant should not be held to any higher burden when he's there pro se on his own trying to represent the claim. He cannot be forced to bear a higher burden in presenting his position to the judge than the attorney has when it advances to the second stage. We would submit if there is even one instance of possible neglect in the case, an attorney should be appointed and it should move on to the second stage where the defendant gets the benefit of someone to advocate his position. On our record, fairly assessed, including the 2007 hearing, we would submit that Mr. Gilmore met that standard with the claims involving the testimony of Patricia Howley. So two related claims, failure to investigate, find her, get her to trial, but at least, if not that, failure to present the stipulation that the attorneys had agreed on for presentation at the trial. Well, the failure to investigate, wouldn't that be more apropos if there was a failure to even attempt to locate her, where in this instance, it looks like there were several different attempts that were made, multiple attempts, where they tried to find her, couldn't find her, different people said different things about her, whether you believe all that, any of that, none of that. The bottom line is there was an attempt, though, to find her. Yes, there's no question there was an attempt. This isn't one with a total failure to investigate. I acknowledge that. That's why I think maybe it's easier to focus on the stipulation here in this particular case in showing the neglect, because there were going to be problems with Howley's testimony. She was impeachable in a number of ways. She at least had some reluctance about appearing to testify. But they were able to reach a stipulation that could have been presented at trial, yet the attorney chose not to present that stipulation. Wasn't that sort of a balancing? Okay, I can get this in, and it's a step, and it's cross-examination proof. That's the joy of a stipulation. But on the other hand, she was aware of witnesses that the state would then have been able to call. She knows they're there. She knows they're there. She knows they're in the bullpen. And this is evidence that the state would not otherwise have been able to get in. Isn't that a balance? At least two of those witnesses that she named had absolutely nothing to do with Patricia Howley and would not have refuted Patricia Howley. Attorney Harris referred to witnesses named Meeks and Griffin. They had things to say that would potentially have impeached the defendant if he had taken the stand and testified. But what she represents, those two witnesses would have said, has absolutely nothing to do with contradicting Patricia Howley, and calling Howley would not have opened the door to those witnesses being called on rebuttal, as far as we can tell from this record. Again, without having had to go into a hearing where we can hear from those witnesses at this point. There were two other witnesses named Dixon. I think it's, there's a Troy Dixon, a Tommy Dixon. One of them has the nickname Peewee. There's also an indication that somebody else in the group of characters at this apartment complex also had the nickname Peewee. So there's some confusion over the character. Yes, those witnesses potentially could have had something to say since Ms. Howley was someone who she bought drugs from once on the night of this crime and was attempting to buy drugs from a second time. So yes, those were potentially rebuttal witnesses. But again, we haven't heard from them. We haven't heard their story to know exactly what they would say. Yes, those were the attorney's reasons. But I want to emphasize how important Patricia Howley's testimony could have been for the defense here. Her testimony provided an alternative scenario for how the shooting came about, a potential alternative motive. Very important. How was the motive? How was the motive? Very different. She was suggesting that it was somebody coming to steal. How is that admissible? How is it admissible that she thought maybe somebody else was coming to get her? But what she observed, she's an eyewitness to the shooting. She's an eye-hearer. Eye-hearer. She's an eye-watcher. But she's feet away and certainly her reaction, I'm talking from her perspective, she thought it was her. I'm not claiming that was admissible at trial. Wasn't at the whole point though, whether it be admissible or not? But she'd have the factual basis to draw the inference that, look, this woman bought drugs the one time she had. There's a dispute. Was it a $50 bill or a $100 bill? But the defense would say the opportunity, maybe it was somebody coming after her and her money. That was what the defense was trying to portray. The other part of her testimony, which I think is every bit as important, is she testified once the shot is fired, after her initial shock over what happened, she goes upstairs, knocks on the bedroom door and finds the eyewitness, A.C. Spam, still in bed. And he doesn't get out of bed until after she knocks on the door and goes into the bedroom. His testimony was the minute the shot was fired, he jumped out of bed, ran to the window and saw my client. She doesn't exactly see him in bed. That's sort of her inference, isn't it? I think in her affidavit, I believe in the affidavit she submitted with the 2007 petition, she does say she saw him in bed when she went in the door. And then didn't he testify that the bed was basically right up against the window? I don't recall where he testified the bed was located. But he does testify he got out and looked out the window right away. And our position is with the time lag she puts in there, he wasn't already looking out the window and the person leaving the scene would not have been there by the time he gets to the window under her scenario of what occurs. So I think she has a significant reputation of his testimony, placing the defendant at the scene and fleeing from the scene of the shooting, fleeing from the apartment building. The shooter, not the defendant, from your perspective? Correct. But that also assumes that the shooter fled immediately, didn't wait around in the front lobby or by the front door, right? But Spann's testimony is that he immediately gets up upon hearing the shot. And her testimony contradicts that he did that and would have therefore been in a position to make the observations he said he made. And again, we're talking about did the defendant present an arguable claim here. There are some factual disputes here, Your Honor. No question about it. But we submit that on the total record here, there is enough to meet that standard of arguable neglect. Why is this not excusable on the basis that there was this all was strategy of trial counsel? Well, we're saying, you know, again, from the perspective of the pro se defendant making this claim, claiming, hey, we had this really good witness, we didn't call, and there was a stipulation and they turned to me and we went on. That is enough to show possible neglect. Another thing I'll point out is there's a dispute between the defendant and Ms. Harris about what discussion of the stipulation occurred. The defendant says he knew about the stipulation before trial and then it's never presented and nothing else is ever said to them. She says there's a discussion with the defendant and they argue back and forth and ultimately he, we'll call it maybe reluctantly acquiesces to not presenting the stipulation when she was adamant about not doing it. But that's, again, that's a matter of dispute. And that's a second stage question. As far as showing arguable or possible neglect, the defendant's representation should be sufficient here. You know, there certainly are other persons who can still be heard from if this case goes bad. First of all, Ms. Hawley's testimony was truncated at the original hearing as this Court recognized in the 2007 opinion, so we've never heard her full story on her oath. We've never heard from the defense investigator who tried to find her, but if you want to focus on the stipulation, we haven't heard from the Obama witnesses to know exactly what they would have said. Nor did anyone introduce into evidence the actual stipulation to know exactly what they had agreed upon. So all those things are missing, but again, we're looking at this from the perspective of the defendant. At the first stage, what showing does he have to make? He made the necessary showing of possible neglect. That's why we asked for another revamp, but this time to the second phase, where for once and for all, we can have an evidentiary hearing or have this fully fleshed out in the circuit court. Any further questions? Thank you. Thank you for the opportunity to make rebuttal. Ms. Kripke? May it please the Court, Joan Kripke on behalf of the people of the State of Illinois Council. I'd like to direct this Court's attention to how we got here after all these remands. This whole case started with the defendant filing a pro se motion alleging the ineffective assistance of his trial counsel. The one thing that is incontrovertible is that ineffective assistance of counsel claims are evaluated under the strictness standard. And this Court did that. What happens with Krenkel is that Krenkel kind of throws a monkey wrench in, because they use language like a colorable claim of ineffective assistance of counsel or possible neglect of the case. These terms are not defined, especially possible neglect of the case, which if you read the case law, they mix it up. Sometimes they use that language. Sometimes they use the language of Strickland, ineffective assistance of counsel. But the bottom line is, he's saying, my counsel was ineffective. How does a court of law evaluate ineffective assistance of counsel? And the answer is, through Strickland, which is what the Court did. Now, I have several ways I would like to respond to counsel's argument. First of all, they argue that this Court should review the case under de novo review. We believe that is incorrect. We believe it's incorrect for two reasons. First of all, the trial court did not err in the way it conducted the hearing. There are three parameters that are used to talk about how a Krenkel hearing is conducted. One is, did the defendant speak? Yes, he read his allegations of the record. Two, did the court interact with the defense counsel who's being accused of the allegations? Yes. Did the counsel read the record? In this case, unclear may be parts of it. But those three parameters are written in the disjunctive. There's nothing saying that the court has to do all three of them. We know for sure that the court did the first two, talked to defendant, talked to counsel, listened to defendant, and looked at part of the record. So for that reason, there's no procedural error in how the court conducted that hearing. And the other reason why we don't believe that it's de novo review and that your standard of review is manifestly erroneous is, let me turn the page. It's age, Ms. Kripke. It's age. I know. I have it too. It's because we reached the merits of the case. And reaching the merits of the case, what is that? Well, if the defendant had said, my counsel, I had a witness, and she didn't bother to investigate, and they called up the counsel and said, Ms. Harris, did you bother to look for her? And she said, no. That's not reaching the merits. That's pretty much okay. We see that nothing happened here. But that's not what happened in this case. However, if this court follows defendant's argument and says, yes, it's de novo review, yes, we need a remand, the remedy is not what defendant is asking for. The remedy, according to the case law, is you send it back for another preliminary hearing. This court can't just throw up its hands and say, you know, they can't seem to get it right down in Kane County. That's not what the standard is. We've had cases before where this court has remanded multiple times on 604-D. You just don't throw up your hands and say, all right, we give up. They can't get it right. That's what happens if you do a de novo review. But we maintain that this is not de novo review, that it's manifestly erroneous. So let's look at what else defendant says. Why didn't they go back and look at the 2007 hearing? That was really, he argues that this was great argument that was presented before the court. I'd like to remind the court, what happened with the 2007 hearing? What was the error there? One, they appointed counsel when it was a preliminary hearing. Procedurally wrong. Second of all, that counsel that they appointed only adjudicated or litigated two issues. The two issues are the ones that are on appeal right now. The defendant is saying, let's send it back down to appoint counsel to adjudicate the two issues that are being adjudicated right now. We already did that once, and he already got a ruling. And even though the ruling was incorrect because it was procedurally incorrect, and he's saying that was even better because they had more testimony, the court ruled that there was nothing there, and they dismissed the defendant's motion. In this case, the defendant, but let's look at what the defendant is alleging here. And I'd like to talk about the stipulation, first of all. The record refutes, what the defendant argues about the stipulation is, I knew about the stipulation, but she never told me, my counsel never told me that it was not going to be put on. And as Harris said, it's not true. We had an extended argument over it, and in the end, it's trial strategy. She gets to decide if that stipulation goes in. But if you go back to page 657 of the record, at this point in the case, what was going on is, the state rested, there was a motion for a directive verdict, that was heard and denied, and then the defense rested, they sent the jury out, excuse me, they sent the jury out, and then the state says, and then they're at the jury instruction conference, and the state says, well, we have to look at IPI 101, which has language that says, that we have to modify, because we anticipated a stipulation was going to be offered. It was not. So I will be striking the language that says, the evidence you should consider consists of witnesses' stipulations and exhibits, and I'm going to strike the word stipulation. And the court says, so you're not going to have a stipulation, we're going to strike stipulations, and the state says yes, and Ms. Harris says, no objection. We don't have the defendant standing up saying, what? That stipulation has to be heard. I object to this. He's in court. So that he can't argue now an appeal, that there was ineffective assistance of counsel, I had no idea that she was not going to present that stipulation, and that stipulation is absolutely refuted by the record. So that's one thing. The defendant mentions people. Does the proceeding, you know, I see you have one page in your hand. Does it reflect the defendant was present? Well, I looked for that. And so that would be a no? It doesn't reflect it, but let me tell you how I went back. I went back to the very beginning of that particular day. I have the sheet. I don't have Xerox, but I can send it to you. And I looked on the cover sheet. It named the attorneys. I flipped it and say defendant. I don't believe it said defendant. I flipped it open. The court said probably we're continuing. He did not say who was present in the courtroom. However, the trial went on. The trial continued until the state rested. The defendant has never made any allegation saying that the defendant was not present for part of the trial. But this is a jury instruction conference. And he was in custody, right? He was in custody, but they also don't say he was taken out. It says the jury was taken out. So you're cobbling it together to assume he was still there. I don't know if I've ever seen in a record, I can't recall, that it says the defendant is taken out during a jury instruction conference. Sometimes it doesn't say defendant exits. So, I mean, I don't know. But I'm presuming because this happened right away that the defendant may have been present. And doesn't the defendant have to be present during, isn't even allowed to be present during a jury instruction conference? A defendant can object to instructions that are given or speak up during that time. So I am presuming, the record does not say yes or no. So what I'm arguing here, what we are arguing here, is that this was known and the record does not demonstrate that the defendant was present because it doesn't show that he wasn't present. As to the viability of the argument regarding regarding counsel and her efforts on behalf of the defendant, this was not arguable neglect of the case. It wasn't possible neglect of the case. This was not ineffective assistance of counsel. What was contained in the stipulation that is so newsworthy or notorious? We don't know. What we know, one of the things we know that was not in it and why Ms. Harris was reluctant to put it on, not only because she said there were two people there to impeach. The defendant just gave two names of people he said were definitely the people that were brought in to impeach. I don't remember those names. I don't know anything about them and I don't believe it's a record. I may be wrong on this, but I don't recall her saying X and Y are in the back. What she said there, I know the state had, I knew the state had two witnesses in lockup waiting to come in. But I don't recall any names being mentioned. So if counsel knows of something, it's not a record as far as I recall. What I do know was not in the stipulation, Justice McClern, to answer your question, was the stipulation was predicated upon the statement Ms. Holley gave to the police. And one of the things she said was, I believe the shooter came for me. And the state refused to stipulate to them. So Ms. Harris didn't, was reluctant to, because that was important to the defendant's case. She didn't want to put that in. Without that information, she felt that it weakened the defendant's case. She also felt that these two people, whoever they were. What I'm trying to get at is, I don't remember, so I'm going to ask you if you remember. What was in the stipulation that supposedly was so notorious that would have resulted in a different verdict, or the probability of a different verdict, or would have shown patently that the attorney, as a reasonable practitioner, should have had that testimony, or that evidence presented to the jury? I don't know, and I don't believe the stipulation is in the record. No wonder I don't remember it. I mean, that's how I remember it. I don't believe, I looked, I could not find it. I don't believe it's there. If we don't know what the stipulation was, how can we make any determination? They're called touchstones or benchmarks, usually, and that is that you have to compare something against something to make a relativistic determination. If we don't have the stipulation, how are we supposed to make any determination as to whether or not, number one, it was relevant, material? The fact that people stipulate the things don't necessarily indicate that they're relevant or material. It may be under the rules of evidence that they're not admissible, but the stipulation makes them admissible. So I'm going to be asking you this, too, Mr. Lilley, and so pay some attention. Regardless of what was in the stipulation, I agree with you. As far as I recall, I didn't read the stipulation. But regardless of that, what's important is the fact that that is trial strategy. The counsel is allowed to make the decision of what evidence is presented to the court, and in her determination, she said that unequivocally, she thought that it would be more damaging to the defendant's case to put that stipulation into the record and to risk having it being countered by whoever those two witnesses were than to put it on, especially because we know it did not have the part where Ms. Holley said, I believe I was the target. And that's what's important about the stipulation. It's trial strategy. And you can't hold someone to be, show possible neglect of the case, or ineffective assistance of counsel, when it's a trial strategy decision. And one that was well thought out and presented as, well, you know, I flipped a coin. She didn't say, I flipped a coin and it came down, let's not put it in. Then there may be a question. What she said, she gave reasons why she didn't put it in. And that's why this case can be decided on merits. There was a reason for them not bringing it in. And the same reason why she said, she explained the absence of Ms. Holley. And what's really incredible in this case, and I don't think I've ever seen this before, she said, we tried multiple times to locate this woman. Couldn't locate her. Sent out an investigator. Could not locate her. The defendant called me from jail and said, I just got her on the phone. She's at this address. They sent somebody out. And the court asked the defendant, did this happen? And the defendant said, yes, I told her. And the court said something like, well, it's good that you did that. They still could not bring her in. Ms. Harris testified that Ms. Holley's relative said, she's hiding. She doesn't want to testify. She's not going to come out. You're not going to find her. So this trial is over. She tried. And then she said, I knew this lady. I represented her over the years. She also had a very fragile mental state due to being present when her sister was shot to death inside a car by the ex-husband. And she said, after that, Ms. Holley had terrible problems. She said, even if I could have brought her in, I wasn't sure I was going to put her on the testify, depending on her mental state at the time. And so she had this stipulation as her ace in the hole. Her ace in the hole, she in the end decided not to use because she saw that the state had people there who could possibly impeach it. So this was not just a flip of the coin. She thought it out methodically every single step of the way. And for all these reasons, just is not the standard. That is, to a unique statute, the standard here is ineffective assistance of counsel. When the court wrote its opinion, it couched it in the language of Strickland. It did not talk about the prejudice prong and say the defendant did it. The court said, this is not ineffective assistance of counsel. The only words that the court did not put into its conclusion in its order was to say, therefore, there is no possible neglect of the case, which is embedded within Strickland. And for all those reasons, we believe this court should affirm the denial of the defendant's motion to find that he had ineffective assistance of counsel. Thank you. Mr. Lillian. I'll start with the stipulation. It is from Ms. Harris' various representations, including her testimony at the 2007 hearing where we are drawing our conclusions about what the stipulation showed. Basically, the judge, she said, the state would not agree to the part where Holly was speculating they were trying to shoot me over the drugs. But we know Holly's factual position and our position is it was the factual account that was there and it was just her opinion as to they were after me that was kept out. That the stipulation was to hurt accountable offense. They had a case statement from her. They had police reports from her. She gave the affidavit in 2007. We know her story. That's her factual story about what she observed on that day up to and after the shooting is what was in that stipulation. Isn't her statement self-impeaching to the extent that even though she thought that this was what was going on, she didn't identify the hurt? She said she did not see the shooter. Now, she also testifies the defendant wasn't there. For whatever that's worth, she does say that also. Which is another thing that can kind of cut both ways. If he's there, he's not at the door. Now, it also could arguably tie into his somewhat potential alibi. I think Ms. Harris does say this was an alibi case. I had these two women somewhere else in King County. Sitting at the kitchen table, very angry, very upset, saying he's going to go back. It cuts both ways. He wasn't here, so maybe he's at the alibi and maybe he's in the hall. That was another factor? That was her factual testimony. All Ms. Harris represents was her opinion that they were coming to shoot me. The two rebuttal witnesses, if I recall, at least one of them was going to say that earlier that day the defendant, who this witness knows, approached him about getting a gun. Correct, but that wouldn't have rebutted anything. In the state, call the witness who said something like that, a witness named Nichols. I'd also point out that the two witnesses I named earlier, Meeks and Griffin, it is in the August 19, 2010 hearing where Ms. Harris talks about those being rebuttal witnesses. They are in the record at the August 19, 2010 hearing. Again, one of our problems here is the judge didn't go look at the whole record. There are things in these prior hearings, in the three prior remands that are relevant to this claim. Normally, when you have a crankle claim, it's the judge who presided at trial who's looking at it. He knows the whole record. Here, because we had a change of judge, when the new judge comes in on this most recent remand, he did not bring himself up to speed on the whole case. That's one of the reasons de novo review is what we need here. You can't defer to his findings. Because he didn't have the whole record, he used the wrong standard and he approached this under possible neglect, this calls for de novo review. But it doesn't matter, ultimately. Even under the manifestly erroneous standard, we say there is a showing of possible neglect on at least these Patricia Holley-related claims, most prominently the stipulation claim. Counsel, she didn't identify the perpetrator, but she also said that the defendant wasn't there. That is what she said. And to say that the defendant wasn't there is the conclusion of a syllogism. But I think ultimately, you could really only testify, I did not see the defendant. That's where I'm going to. So how is her conclusion probative of anything unless she says something to the effect I saw the perp, I couldn't identify him, but he wasn't the defendant because this person was wearing a Where's Waldo outfit and I saw him five minutes prior or whatever in a Harvey outfit. We have no indication. Harvey answers the door and gets shot. I'm not claiming she sees the shooter. But again, this gives a whole different scenario for the whole crime and whole different possibility. It gives a scenario, but it also gives a very weak scenario. I mean, one scenario is this woman is delusional. I... She is there by... She gives a factual account on that very night and there's nothing to indicate that the police found her to be so out of it or so incapable of giving... They took a statement from her. They got a statement from her. They got her account on that very night. Do you agree with Ms. Cripty that there is no hard copy of the stipulation? I don't know that one still exists. I said it in my initial argument. One was never introduced. That's one of the things that can be determined on remand. And the best that you can come up with is that she believes that this was a retaliatory attempt at murdering her because of a drug deal. Well, trying to get the woman, but more of an attempt to get the... because she had the money for the drugs. But then she's not the one who answered the door. But I'd also add, we cannot ignore the other part of her story about the aftermath of the shooting where she refutes the eyewitness on seeing the defendant fleeing the scene. That's also part of her account of what happened on that night. Well, I mean, his testimony IDing the defendant running was certainly not the only evidence against the defendant. A dying declaration? Right. The dying declarations, that was adjudicated. We challenged those in the original appeal. That claim has been adjudicated. So you're asking for remand for basically a stage 2 hearing? The second stage. Or the alternative for remand to allow this new trial judge to review the entire record using the appropriate standard and to render a I guess without clouding the record here a de novo court. Correct. However he may see it. Yes. Any questions, Bob? Thank you. Thanks. We'll take the case under advisement. There's another case on the call. Short recess.